Magistrate Judge Theresa L. Fricke

———— FILED ———— LODGED
————RECEIVED

Apr 28 2023

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-mj-05164 |
| Plaintiff, | |
| | COMPLAINT for VIOLATION |
| v. | |
| COLIN BLAINE BECCARIA, | Title 18, U.S.C., Section 922(g)(1) |
| Defendant. | Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(C) |

BEFORE, Theresa L. Fricke, United States Magistrate Judge, U. S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### (Unlawful Possession of a Firearm)

On or about April 22, 2023, in Pierce County, within the Western District of Washington, COLIN BLAINE BECCARIA, knowing he had been convicted of the following crime punishable by a term of imprisonment exceeding one year:

Complaint - 1
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

    i.    *Distribution of Controlled Substances*, in United States District Court for the Western District of Washington, under case number CR19-5251RJB, on or about January 10, 2020;

did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is: a Springfield Armory, Model XDM, .40 caliber pistol, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT TWO

### (Unlawful Possession of Ammunition)

On or about April 22, 2023, in Pierce County, within the Western District of Washington, COLIN BLAINE BECCARIA, knowing he had been convicted of the following crime punishable by a term of imprisonment exceeding one year:

    i.    *Distribution of Controlled Substances*, in United States District Court for the Western District of Washington, under case number CR19-5251RJB, on or about January 10, 2020;

did knowingly possess, in and affecting interstate and foreign commerce, ammunition, that is: 13 rounds of .40 caliber ammunition, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THREE

### (Possession of a Controlled Substance with Intent to Distribute)

On or about April 22, 2023, in Pierce County, within the Western District of Washington, COLIN BLAINE BECCARIA, did knowingly and intentionally possess, with intent to distribute, a controlled substance, including: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a substance controlled under Title 21, United States Code.

Complaint - 2
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

And the complainant states that this Complaint is based on the following information:

I, Ray Critchfield, being first duly sworn on oath, depose and say:

**INTRODUCTION**

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA), and have been so employed since January of 2022. I am currently assigned to the DEA Seattle Field Division, Tacoma Resident Office.

2.      I received 17 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from January 2022 to April 2022. The training curriculum covered all basic aspects of drug investigations, including identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigations, and the general operation of drug trafficking organizations.

3.      While working as a Special Agent, I have been involved in the investigation of individuals and organizations involved in the manufacture, transportation, and distribution of controlled substances. I have participated in the execution of search warrants for violations of federal and state drug laws. I have conducted surveillance operations and have become familiar with the methods used by individuals engaged in the manufacture, transportation, and distribution of controlled substances. I have also consulted with other Special Agents that have monitored informant conversations with drug traffickers and have monitored drug-related

Complaint - 3
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

conversations between drug traffickers as part of court-authorized interception of wire and electronic communications. In light of the foregoing, I am familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed; the methods of payment for such drugs; and the methods of laundering drug proceeds.

4.    Prior to working for the DEA, I was employed as a retail loss prevention professional from 2014 thru 2021, for several companies such as Home Depot and, most recently, Costco Wholesale. While working in retail loss prevention, I frequently contacted individuals who were shoplifting to fund their drug habit and became familiar with methods that would be used to convert merchandise into currency. I also became familiar with various tactics and methods used to conceal items, oftentimes drugs, in addition to methods of counter surveillance that shoplifters would employ to detect retail loss prevention professionals.

5.    Prior to working in the retail loss prevention field, I spent seven years serving on active duty as a Cavalry officer in the United States Army. Between 2007 and 2014, I served on multiple combat deployments to both the Iraq and Afghanistan theaters of operation. During my time in Afghanistan, I experienced firsthand how the opium/heroin drug trade supported and financed terrorist organizations and government corruption within the country. Since leaving active duty, I have continued to serve in the United States Army Reserve for the last eight years where I have achieved the rank of Major and continue to lead and train soldiers on a part time basis.

6.    The information in this Complaint is based on my investigation, along with investigation by other law enforcement officers, conversations with law enforcement officers, and review of law enforcement documents. It does not purport to state every fact known to law enforcement, but rather only sufficient facts to establish probable cause to conclude that COLIN BLAINE BECCARIA committed the charges set forth above.

Complaint - 4
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## SUMMARY OF INVESTIGATION

7.      On April 22, 2023, at approximately 9:00pm, Puyallup Police Officer Andrew Bond was on patrol. He and Officer Olinger were dispatched to the Motel Puyallup at 1412 S Meridian for a report of an unwanted customer. The clerk, J.N.W., had called police to remove the occupant from Room 131. While removing that occupant, the occupant made a comment to Officers Olinger and Bond about a male in the lobby the occupant suspected was dealing drugs. Officer Bond knew the male the occupant was referring to because Officer Bond had seen him inside the lobby. J.N.W. had previously told officers the male in the lobby was her fiancé. Further, Officer Bond had seen the male sitting in the lobby on a bench seat holding a child. Officer Bond also saw the male leave the lobby and enter a black Nissan Sentra, bearing Oregon license plate 001NLC, that was parked just outside the office. As the officers left the hotel, Officer Bond conducted a record check of the Nissan and found it was registered to PV Holding Corp which is known to be the rent-a-car company, Avis.

8.      Officer Bond looked at prior police reports involving J.N.W. and found a report from Fife PD where J.N.W. and a male, COLIN BECCARIA, had been arrested for a stolen vehicle, stolen firearm, and drugs. The physical descriptors in that report for BECCARIA matched those of the male in the lobby. Using a law enforcement database, Officer Bond conducted a record check of BECCARIA and found he was a suspect in a Lakewood PD case from April 3, 2023, where there was probable cause to arrest BECCARIA for unlawful possession of a firearm (first degree) and unlawful possession of a controlled substance with intent to deliver. A criminal history check of BECCARIA returned with a recently issued federal warrant for probation violation - dangerous drugs. The physical descriptors on the warrant and from Lakewood's report also matched those of the male in the lobby. Officer Bond then viewed a Washington Department of Licensing photograph of BECCARIA and confirmed with 100% certainty that BECCARIA was the male in the lobby of the hotel.

Complaint - 5
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

9. Officer Bond notified Officer Olinger and other officers of this information and asked them to join him at the hotel to take BECCARIA into custody. As Officers Olinger and Bond walked towards the hotel lobby, Officer Bond could see BECCARIA dancing inside while holding the baby and standing next to J.N.W. Officer Bond called BECCARIA by his first name and asked him to hand the child to J.N.W. Officer Bond detained BECCARIA in handcuffs and walked BECCARIA out to a patrol car. Officer Bond informed BECCARIA that he was being audio and video recorded. Officer Bond told BECCARIA about his probation violation warrant and BECCARIA said he wished somebody would have just called him to let him know. Officer Bond then read BECCARIA his *Miranda* rights from a pre-printed card. BECCARIA said he understood his rights. At no point during the subsequent interview with BECCARIA did he invoke his right to remain silent or request to speak with an attorney. Officer Bond asked BECCARIA who the rental car belonged to, and BECCARIA replied he had rented it and planned on keeping it until Tuesday.

10. Officer Bond asked BECCARIA if there were any items in the car Officer Bond should know about or if Officer Bond's narcotics K-9 would alert on the car. BECCARIA said, "No." Officer Olinger asked Officer Bond to join him in the hotel lobby; Officer Olinger then asked what Officer Bond wanted to do with the two bags BECCARIA had left behind. Both bags were sitting on a bench. One was a full size backpack and the other was a much smaller backpack. When Officer Bond had been in the lobby on the previous call (to oust an occupant), Officer Bond had seen BECCARIA sitting on the bench with the small backpack immediately adjacent to his left leg. Officer Bond then walked around the Nissan while Officer Olinger waited in the lobby. From outside the car, Officer Bond could see a roll of small unused plastic baggies which Officer Bond recognized from training and experience as being commonly used to store narcotics. A glass dish was sitting on the driver's seat with what appeared to be residue of burned pills in the bottom. On the front passenger seat was a Ziploc bag of cannabis.

Complaint - 6
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

11.    Officer Bond returned to the lobby and saw J.N.W. was now seated on the bench with both bags. Officer Bond asked her if the bags belonged to her or BECCARIA, and J.N.W. replied that the bags belonged to the baby. Officer Bond pointed out that it is not common for people to carry more than one diaper bag. Officer Bond then looked at the large bag, that appeared to be filled to capacity. The smaller one was not overstuffed nor of the size to hold routine baby items. Officer Bond noticed a key fob hanging from the top of the small backpack that looked like a Nissan key fob. J.N.W. started opening the large backpack which was in fact filled with baby items. At this point, after having seen BECCARIA sitting with the small backpack, the key fob hanging from it, and J.N.W.'s statements trying to deflect ownership of the bag away from BECCARIA, Officer Bond reasonably believed the small backpack belonged to BECCARIA and that it contained contraband items.

12.    When Officer Bond picked up the small backpack, he immediately noticed it was unusually heavy. Officer Bond grabbed the bottom of the bag and felt a rectangular-shaped object which was consistent with the slide of a handgun. J.N.W. was upset at this point and said BECCARIA had recently returned from drug treatment in California. Officer Bond walked the small backpack over to BECCARIA and asked what kind of gun was in the backpack. BECCARIA responded without hesitation, ".40 caliber." BECCARIA said he did not know if the gun was stolen.

13.    Officer Bond told BECCARIA that he could see various drug paraphernalia inside the car. BECCARIA admitted that he has a bad drug addiction he has been hiding from J.N.W. Officer Bond asked BECCARIA if he would be willing to grant consent to search the vehicle. Officer Bond explained that BECCARIA had the right to refuse the search, limit the scope of the search, or stop the search at any point. BECCARIA consented to an unrestricted search of the vehicle. Officer Bond then asked what else was inside the small backpack besides the gun. BECCARIA stated he had both fentanyl pills and fentanyl powder in it. Officer Bond asked BECCARIA for consent to search the

Complaint - 7
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

backpack. Officer Bond explained again that BECCARIA had the right to refuse the search, limit the scope of the search, or stop the search at any point. BECCARIA consented to an unrestricted search of the backpack. BECCARIA sat on the push-bars of Officer Bond's patrol car while Officer Bond searched the backpack on the hood.

14.    Officer Bond asked BECCARIA if the gun was loaded and if there was a round in the chamber. BECCARIA confirmed it was loaded with a round in the chamber. In the main zipper compartment of the small backpack, Officer Bond located a Springfield Armory XDM .40cal with a 3.8" barrel. Officer Bond removed the magazine from the grip and found it was loaded with twelve cartridges. There was one cartridge in the chamber. The gun was carried in a ready to fire manner; this particular firearm model does not have a manual safety. BECCARIA admitted to Officer Bond that he owed a lot of money and carried the gun for protection.

15.    Under a white towel strapped to the exterior of the small backpack was a leather notebook. Officer Bond looked at several pages in the notebook and saw handwritten notations of currency amounts in hundreds and thousands along with references to "blues." Officer Bond knows that the word "blues" is street terminology for counterfeit oxycodone pills that are fentanyl. The contents of this notebook appeared to be consistent with a drug ledger that dealers use to keep track of drugs delivered and money owed/received.

16.    In the back pouch within the main compartment of the small backpack, Officer Bond found a Ziploc bag with two additional sandwich size bags inside, each containing small blue pills that had the imprint "M30." There was also a small plastic container with several additional blue pills. A white powder-like substance consistent with the appearance of powdered fentanyl was in a twisted piece of plastic baggie. In Officer Bond's estimation, based on his training and belief, the quantity of pills was indicative of distribution quantities.

Complaint - 8
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

17. Officer Olinger informed Officer Bond that there was a bag of ammunition on the rear passenger seat of the vehicle. Officer Bond saw loose ammunition of various calibers in a gallon-sized bag.

18. Officer Bond asked Officer Alfaro to transport BECCARIA to the Pierce County Jail to be booked on gun and drug charges. During a search of BECCARIA prior to transport, officers found an additional notepad. Inside the notepad was a note that read, "$30,000 or more in money and dope."

19. Officer Bond transported the collected evidence items back to the Puyallup Police Department. Once there, Officer Bond took photographs of the evidence, which was then weighed and packaged. The fentanyl pills had an approximate weight of 103.3 grams, which included the weight of the two baggies. Officer Bond knows that a common conversion for pill weights is ten pills per gram. Using this conversion, Officer Bond determined there were likely 950 to 1,000 fentanyl pills total. The fentanyl powder had an approximate weight of 14.7 grams, which included the packaging.

## CONCLUSION

20. Based on the above facts, I respectfully submit that there is probable cause to believe that COLIN BLAINE BECCARIA did knowingly possess a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1), and

//
//
//
//
//
//
//

Complaint - 9
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

knowingly and intentionally possessed Fentanyl with the intent to distribute it, in violation of Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(C).

RAY CRITCHFIELD, Complainant
Special Agent, DEA

The above-named agent provided a sworn statement attesting to the truth of the contents of the forgoing affidavit on the _28th_ day of April 2023. The Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this _28th_ day of April 2023.

THERESA L. FRICKE
United States Magistrate Judge

Complaint - 10
*United States v. Beccaria*
USAO No. 2023R00458

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800